## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

STEVEN RICHARD YOUNG,

        Defendant.

No. CR02-0035

**REPORT AND RECOMMENDATION**

_____

This matter comes before the court pursuant to movant Steven Richard Young's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docket number 105). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application for writ of habeas corpus be denied and this matter be dismissed.

## I. PROCEDURAL HISTORY

Movant Steven Richard Young and one other individual, Melanie Kaye Morlie, were charged with federal crimes via indictment on May 21, 2002. Mr. Young was named in all four counts of the indictment. Count 1 charged Mr. Young and Ms. Morlie with knowingly and unlawfully combining, conspiring, confederating, and agreeing with other persons to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count 2 charged Mr. Young with knowingly and intentionally possessing with the intent to distribute approximately 15 ounces of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count 3 charged Mr. Young with knowingly possessing

with the intent to distribute approximately one-half pound of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Count 4 charged Mr. Young and Ms. Morley with using or intending to use approximately $17,000 in United States currency derived from the crimes outlined in Counts 1 through 3 in continuing to commit the offense alleged in Count 1 in violation of 21 U.S.C. § 846. The indictment also outlined the forfeiture of the currency described in Count 4 pursuant to 21 U.S.C. § 853.

On July 23, 2002, Mr. Young gave, through counsel, notice of his intent to plead guilty to Count 1 of the indictment pursuant to a plea agreement. On August 2, 2002, this court entered a Report and Recommendation that Mr. Young's guilty plea be accepted. The plea was accepted by the United States District Court for the Northern District of Iowa on August 16, 2002. Counts 2, 3, and 4 of the indictment were dismissed pursuant to the plea agreement. The plea agreement contained numerous stipulations, including: (1) that "no motion for downward departure shall be made, under any circumstances, unless the defendant's cooperation is deemed 'substantial' by the United States Attorney's Office"; (2) that "[t]he United States has made no promise implied or otherwise, that a departure motion will be made or that [the] defendant will be granted a 'departure' for 'substantial assistance'"; (3) that "[t]he defendant further understands that he will have no right to withdraw his guilty plea if the sentence imposed or the application of the U.S. Sentencing Guidelines is other than he hoped for or anticipated"; (4) that "[t]he parties stipulate and agree that based upon information currently available, the defendant's base offense level should be calculated under USSG § 2D1.1 by starting at an offense level of 36; and (5) that "[t]he defendant agrees that his attorney has represented him in a competent manner and has no complaints about the lawyer's representation." Mr. Young attempted to withdraw his guilty plea on September 30, 2002, but his motion was denied when he orally withdrew his motion during a hearing on October 10, 2002.

Mr. Young was sentenced on January 24, 2003. Pursuant to the plea agreement, the determination of Mr. Young's sentence began at a base offense level of 36. Mr. Young was given a three level decrease for acceptance of responsibility for an adjusted offense level of 33. Under the sentencing guidelines, the adjusted offense level of 33, combined with Mr. Young's criminal history category of VI, required a sentencing range of 235 to 293 months of incarceration. Although Mr. Young's motion for a departure for "super acceptance" was denied by the District Court, the court did grant the United States's motion for a 35% reduction in Mr. Young's sentence for his cooperation. Mr. Young was sentenced to 173 months of incarceration followed by 5 years of supervised release. He was also charged a $100 special assessment.

On January 29, 2003, Mr. Young gave timely pro se notice of his intent to appeal his sentence to the United States Court of Appeals for the Eighth Circuit. In his brief to the Circuit Court, Mr. Young raised numerous arguments, including: (1) the search that led to his arrest was illegal and his confession was involuntary; (2) the information he gave while cooperating with law enforcement should not have been used to indict him on additional charges which allegedly increased the severity of his sentence; (3) the undersigned United States Magistrate Judge did not adequately apprise him of the sentencing court's ability to depart from the sentencing guidelines; (4) the sentencing court did not adequately consider his pro se motion for downward departure from the proposed sentencing range; (5) Ms. Morley's plea to a lesser charge somehow invalidated his own indictment; and (6) his counsel prior to and during the plea proceedings was ineffective. United States v. Young, Nos. 03-1310, 03-2981, 2004 WL 22083488, at *1 (8th Cir. 2003). Mr. Young also, in a separate appeal, appealed the District Court's order that denied "his pro se request for information." Id. The Eighth Circuit consolidated the appeals and affirmed the orders of the District Court, holding that Mr. Young's "unconditional plea" foreclosed his first two arguments and that his remaining arguments lacked merit. Id. The Eighth Circuit also held that Mr. Young's claim of ineffective

assistance of counsel was not properly raised and that he was not entitled to "copies of the sentencing documents of individuals connected to his case." Id. at *2. Prior to the Eighth Circuit's decision, but after Mr. Young filed his appeals, Mr. Young filed motions for correction of his sentence and for appointment of counsel. The Eighth Circuit declined to rule on these matters and remanded them to the District Court. These motions were subsequently denied by the District Court on December 8, 2003, and January 5, 2004, respectively. Mr. Young appealed these decisions to the Eighth Circuit on January 15, 2004. The Eighth Circuit affirmed the decisions of the District Court on May 5, 2004.

The instant motion was filed by Mr. Young, pro se, on August 16, 2004. In his 28 U.S.C. § 2255 motion, Mr. Young raises fourteen arguments challenging his conviction and sentence. Specifically, Mr. Young asserts:

1. A violation of the First Amendment: (1) Assistant United States Attorney Stephanie M. Rose (AUSA Rose) discriminated against Mr. Young by denying him protection against making self-incriminating statements while he was cooperating with law enforcement; and (2) the government denied him immunity under § 1B1.8 of the U.S. Sentencing Guidelines (USSG) as a cooperating defendant.

2. A violation of the Fifth Amendment: (1) AUSA Rose manipulated the indictment to increase Mr. Young's prison sentence; (2) a properly constructed judicial proceeding meeting the requirements of due process did not take place; (3) Mr. Young's conviction cannot stand solely on his uncorroborated confession; (4) AUSA Rose denied Mr. Young immunity in violation of USSG § 1B1.8 and used Mr. Young's incriminating statements against him; (5) Mr. Young's self-incriminating statements were obtained by unkept promises and threats; (6) Mr. Young's sentence was based on inaccurate information; (7) Mr. Young's past crimes were used to increase his prison sentence in violation of double jeopardy; and (8) supervised release constitutes double punishment.

3. An overstatement of criminal history: 9, instead of 21, criminal history points should have been used in the calculation of

Mr. Young's sentence, and thus he should have been assessed a criminal history category of IV, not VI.

4.     A violation of the Sixth Amendment: a jury should have decided every fact related to Mr. Young's case, including the government's position regarding USSG § 1B1.8, drug weight, and the parties' departure motions.

5.     Ineffective assistance of counsel (a violation of the Sixth Amendment): (1) counsel's closing argument at sentencing was perfunctory and ineffectual; (2) counsel failed to present any mitigating evidence at sentencing; (3) counsel failed to subject AUSA Rose's statements at sentencing to the adversarial process; (4) counsel failed to discuss a possible appeal following Mr. Young's guilty plea or sentencing; (5) counsel filed a motion to withdraw and an <u>Ander</u>'s brief on appeal, which forced Mr. Young to proceed pro se; (6) counsel never initiated adequate representation; (7) counsel failed to attend the PSI interview with the probation officer; (8) counsel failed to ask Mr. Young about the search and seizure that led to his arrest; (9) counsel talked Mr. Young into pleading guilty by saying that if he did not sign the plea agreement, he would get no credit for his cooperation; (10) counsel failed to obtain the discovery file, even though Mr. Young requested him to do so at least ten times; (11) counsel implied that Mr. Young would get a 5 to 7 year sentence; (12) counsel knew nothing about USSG § 1B1.8 or § 5K2.0; (13) counsel talked Mr. Young into withdrawing his suppression motion; (14) counsel talked Mr. Young into withdrawing his motion to withdraw his guilty plea; (15) counsel refused to mention at sentencing the government's violation of USSG § 1B1.8; (16) counsel refused to file a motion under § 5K2.0 based on the government's violation of USSG § 1B1.8; (17) counsel failed to raise the government's violation of § 1B1.8 at sentencing or on direct appeal, which resulted in an additional 88 months in Mr. Young's prison sentence; (18) counsel gave erroneous advice regarding Mr. Young's potential sentence, which left Mr. Young unable to make an intelligent choice as to whether or not to plead guilty; (19) counsel grossly underestimated Mr. Young's sentence exposure, telling Mr. Young that the judge would see what Mr. Young had done during the investigation and sentence him accordingly; (20) counsel failed to fully advise Mr. Young as to whether a particular plea to a charge is desirable; (21) counsel made no objections to the PSI until

told to do so by probation officer Brian Draves; (22) counsel refused to call Mr. Draves to testify at sentencing; (23) counsel failed to present evidence at sentencing that showed that AUSA Rose had misled the court by understating Mr. Young's cooperation; (24) counsel failed to prepare for Mr. Young's case in any way; (25) counsel failed to object to the criminal history points and category Mr. Young was assessed at sentencing; and (26) counsel was "hand picked [sic]" by AUSA Rose.

6.      A violation of the Fourteenth Amendment:  (1) Mr. Young's confession was involuntary; and (2) he was repeatedly threatened with a life sentence and promised that his incriminating statements would not be used against him to bring more serious charges.

7.      A violation of the Fourth Amendment:  the police exceeded the scope of Mr. Young's consent by conducting a general search of the glove box, console, and trunk of his vehicle and suitcases therein.

8.      Disparity in the sentences of Mr. Young's co-conspirators.

9.      Prejudice at the hands of the government:  Mr. Young was denied immunity under USSG § 1B1.8, which resulted in his receiving a longer prison sentence as a result of his cooperation.

10.     His guilty plea was obtained by unlawful inducement:  when Mr. Young confronted AUSA Rose about the alleged USSG § 1B1.8 violation, he was told that if he did not plead guilty, drop his suppression motion, and keep his mouth shut, he would get no sentence departure for his cooperation.

11.     Breach of the cooperation agreement:  (1) the arresting drug agents told Mr. Young that the government would not use any self-incriminating statements against him and that AUSA Rose would file a substantial assistance departure motion under § 5K1.1 prior to sentencing; (2) the drug agent said that AUSA Rose had authorized the deal; (3) the government breached its agreement not to use incriminating statements against Mr. Young; (4) the government failed to reveal all relevant and pertinent information about the help provided by Mr. Young prior to the signed cooperation agreement; (5) AUSA Rose spoke in a derogatory manner about Mr. Young at

sentencing; and (6) the cooperation agreement was drawn up in bad faith.

12.     Unethical misconduct by AUSA Rose:  (1) Mr. Young was told that the only way the government could indict Ms. Morley was to also indict him as part of the conspiracy; (2) the government then let Ms. Morley plead to a lesser charge, but did not drop the conspiracy charge against Mr. Young, leaving him as the only person in the conspiracy; (3) AUSA Rose abused her discretion in violating USSG § 1B1.8, manipulated the indictment to increase Mr. Young's charges and prison sentence, violated Mr. Young's First Amendment rights by discriminating against him, used threats and intimidation to secure his conviction, failed to live up to her end of the cooperation agreement, and hand-picked Mr. Young's trial attorney, knowing that his attorney did not know anything about the Sentencing Guidelines and "would not stand up to her [AUSA Rose]"; and (4) AUSA Rose would not allow Mr. Young to argue drug weight at sentencing, which is a violation of his Sixth Amendment rights.

13.     Withdrawal from conspiracy:  (1) Mr. Young took affirmative action to withdraw from the conspiracy by cooperating with the government immediately after being arrested; (2) Mr. Young helped the government get indictments against at least six members of the conspiracy; and (3) the government would not have even known about the conspiracy but for Mr. Young's cooperation.

14.     Health reasons:  Mr. Young suffers from Hepatitis C and cirrhosis of the liver, both of which are chronic and could result in the remaining ten years of his sentence being a life sentence.

The government resisted Mr. Young's section 2255 motion on March 1, 2005.  In its resistance, the government asserts that:  (1) the majority of Mr. Young's arguments, specifically arguments 1 (First Amendment violation), 2 (Fifth Amendment violation), 6 (Fourteenth Amendment violation), 7 (Fourth Amendment violation), 8 (disparity in co-conspirator sentence), 9 (prejudice), 10 (unlawful inducement), and 11 (breach of cooperation agreement), are barred because they were previously raised and lost on direct appeal to the Eighth Circuit; and (2) because Mr. Young's remaining arguments were not set forth in his appeal, the only way the remaining arguments can succeed is if Mr. Young

can prove his counsel was ineffective and that he suffered prejudice as a result. The government asserts that Mr. Young can not meet this burden.

Mr. Young filed motions to appoint counsel for the purposes of this motion and for a hearing on this motion on March 23, 2005. Both motions were denied by United States District Court Judge Linda R. Reade and this motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation on April 27, 2005. Mr. Young filed a supplemental memorandum in support of the instant motion on May 25, 2005.

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 is the statutory analogue of habeas corpus for persons in federal custody. Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct appeal, but yet not fundamental enough to support a collateral attack" under section 2255. Id. at 821. Consequently, relief under section 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, 810 F.2d at 821).

Ordinarily, the failure of a section 2255 movant to raise an issue on direct appeal acts to procedurally bar him or her from raising that issue for the first time in a motion pursuant to section 2255.[1] Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). More specifically, as a result of a section 2255 movant's failure to raise an issue on appeal, the Circuit Court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)). The requirement of cause and prejudice means that a section 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, 97 F.3d at 1076 (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall, 114 F.3d at 758. The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821–22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986) (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from

---

[1] The rule of procedural default applies with equal force to an adjudication of guilt based on a defendant's plea of guilty as it does to a court or jury conviction. See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default after the defendant's knowing and voluntary plea of guilty).

procedural default based on cause and prejudice, the court may analyze whether based upon a claim of actual innocence under the fundamental miscarriage of justice exception, the movant can avoid procedural default.  See Dretke v. Haley, 541 U.S. 386 (2004).  The actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty."  Anderson v. United States, 25 F.3d 704, 706–07 (8th Cir. 1994).  Furthermore, "[t]he exception only applies to claims of factual innocence as opposed to legal innocence."  Id. at 707.  Specifically, a movant claiming actual innocence must show:  (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.  Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997).  The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving."  Id. at 1351 (citing Schlup v. Delo, 513 U.S. 298, 321–22 (1995)).  Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result."  Id. (citing Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996)).

### B.  Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Strickland, 466 U.S. at 684.

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart, 506 U.S. at 364 (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)).  A criminal defendant is also entitled to effective assistance of counsel on a first appeal.

Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

Absent unusual circumstances, a section 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. Apfel, 97 F.3d at 1076. However, in order to successfully demonstrate ineffective assistance of counsel within the context of section 2255, the movant faces a heavy burden. See id. at 1076. In the context of a motion under section 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. The United States Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell. The Eighth Circuit's application of this test states:

> Counsel is constitutionally ineffective under Fretwell when:
> (1) counsel's representation falls below an objective standard
> of reasonableness; and (2) the errors are so prejudicial that the
> adversarial balance between defense and prosecution is upset,
> and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 369–70). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693.

If a section 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he or she may not obtain

review of the defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the context of ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. See Smith, 882 F.2d at 333 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. See id.

In addition to establishing "cause," a section 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as a result of counsel's performance. Lockhart, 506 U.S. at 364; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Lockhart, 506 U.S. at 372, quoted in West, 994 F.2d at 513. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Williams, 994 F.2d at 1291.

### C. Mr. Young's Claims for Relief Pursuant to 28 U.S.C. § 2255

#### 1. Arguments 1, 2, 6, 7, 8, 9, 10, and 11 are Barred

Mr. Young raises numerous arguments in the instant motion that were denied by the Eighth Circuit on direct appeal. As stated, the government asserts that at least eight of

Mr. Young's fourteen arguments in his section 2255 motion were denied by the Eighth Circuit. Mr. Young admits arguments 2, 7, 10, and 12 were presented on appeal to the Eighth Circuit, but he states that the arguments "are being presented again with new facts." The government does not claim argument 12 was disposed at the Eighth Circuit. Mr. Young claims that arguments 1, 3, 4, 5, 6, 8, 9, and 11 were "not presented [on appeal] because [he] had to file a pro se brief and [he] . . . is not an attorney and . . . has limited understanding of the law." Mr. Young makes no mention in his motion of whether arguments 13 and 14 were raised on direct appeal.

Having reviewed the Eighth Circuit's decision in Mr. Young's appeal, see Young, 2003 WL 22083488, at *1, and Mr. Young's section 2255 motion in which he sets forth his arguments for relief, this court agrees with the government that a majority of Mr. Young's section 2255 arguments were presented to the Eighth Circuit on direct appeal and were denied. There is no question that arguments 1 (First Amendment violation), 2 (Fifth Amendment violation), 6 (Fourteenth Amendment violation), 7 (Fourth Amendment violation), 8 (disparity in co-conspirator sentence), 9 (prejudice), 10 (unlawful inducement), and 11 (breach of cooperation agreement) were denied by the Eighth Circuit on direct appeal. Contrary to Mr. Young's assertions, argument 5 (ineffective assistance of counsel) was raised in his appeal to the Eighth Circuit, but the court determined that it was not a proper issue for direct appeal. Mr. Young claims argument 12 (unethical misconduct by AUSA Rose) was raised on appeal, but the government asserts that it was not. Argument 12 is really nothing more than a reassertion of arguments 1 through 11 of alleged misconduct by AUSA Rose. Despite the repetition, this court will give Mr. Young the benefit of the doubt. There is nothing in the Eighth Circuit's decision of Mr. Young's appeal that explicitly mentions Mr. Young's claim of unethical misconduct by AUSA Rose and thus this court holds that the issue was not raised on appeal. There is no evidence arguments 3, 4, 13, and 14 were raised on direct appeal and thus these arguments are new to the instant motion.

The Eighth Circuit is clear that "claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981). This is true even if "the issues were raised on direct appeal in a pro se brief," such as in the instant case. Id. Thus, arguments 1, 2, 6, 7, 8, 9, 10, and 11 are barred pursuant to Eighth Circuit precedent because Mr. Young raised them on direct appeal and the arguments were denied by the Eighth Circuit.

2. Ineffective Assistance of Counsel

The success of Mr. Young's remaining arguments, specifically arguments 3 (overstatement of criminal history), 4 (Sixth Amendment violation), 12 (unethical misconduct by AUSA Rose), 13 (withdrawal from the conspiracy), and 14 (health reasons) depend upon the success of his ineffective assistance of counsel argument. Because arguments 3, 4, 12, 13, and 14 were not raised with the District Court or on direct appeal, these claims are procedurally barred unless Mr. Young can demonstrate either "[1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall, 114 F.3d at 758. However, a successful ineffective assistance of counsel claim satisfies the prejudice requirement, negates the procedural bar, and would allow Mr. Young's remaining arguments. Mr. Young specifically asserts ineffective assistance of counsel in his fifth argument, but does not assert it in arguments 3, 4, 12, 13, and 14. However, the substantive arguments Mr. Young raises in arguments 3, 4, 12, 13, and 14 are mentioned in his ineffective assistance of counsel claim. Although Mr. Young does not assert it in his pro se motion, this court assumes that Mr. Young wants his remaining claims viewed under the auspices of his ineffective assistance of counsel argument. Thus, this court will address the remaining issues through such a lens, the success of which mandates that the assistance of counsel Mr. Young received fell below an objective standard of reasonableness and that the resulting "errors [were] so prejudicial" as to create doubt as to the validity of the

adversarial process under which Mr. Young pleaded guilty. See English, 998 F.2d at 613 (citing Lockhart, 506 U.S. at 369–70).

a. Overstatement of Criminal History

Mr. Young asserts 26 areas of deficiency in his counsel, Frank Santiago, in the fifth argument of his section 2255 motion. All 26 points Mr. Young asserts in his ineffective assistance of counsel argument are derived from his substantive claims in arguments 3, 4, 12, 13, and 14.[2] Point 25 of Mr. Young's fifth argument claims that Mr. Santiago did not object to the criminal history category Mr. Young was assessed, and thus pertains to Mr. Young's third argument, that his criminal history was overstated.

Mr. Young was assessed 21 criminal history points for his prior convictions, which constitutes a Category VI criminal history. In his section 2255 motion, Mr. Young asserts that he should be assessed 9, instead of 21, criminal history points, which would classify his criminal history as Category IV. Mr. Young claims that only 9 points are appropriate because his most serious prior conviction was for driving while intoxicated and the sentences of his five prior convictions ran concurrently.

Section 4A1.2(a)(2) of the U.S. Sentencing Guidelines states that "[p]rior sentences imposed in unrelated cases are to be counted separately. . . . Prior sentences imposed in related cases are to be treated as one sentence . . . ." Application Note 3 of section 4A1.2 states that:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest. . . . Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion,

---

[2] Many of the specific allegations of ineffective assistance of counsel are not accompanied by any claim or showing of prejudice (specifically, arguments 1, 2, 3, 4, 5, 7, 8); others are incognizably vague (arguments 6, 20, 24); others are simply contradictions of what was said at the change of plea hearing (arguments 9, 10, 11, 18); some have no support at all (arguments 12, 23, 25, 26); and others have no significance by themselves (arguments 4, 13, 15, 16, 17, 19, 21, 22).

15

> (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Application Note 3 also states that "[t]he court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public." U.S. Sentencing Guideline Manual § 4A1.2. The Eighth Circuit has adhered to these provisions and has not indicated any intention to not do so in light of United States v. Booker, 125 S. Ct. 738 (2005). See United States v. Berry, 212 F.3d 391, 393 (8th Cir. 2000).

Mr. Young's prior sentences were not related. The Operating-While-Intoxicated (OWI) offenses that Mr. Young describes occurred on January 10, 1994, in Benton County, Iowa; February 5, 1995, in Linn County, Iowa; March 9, 1995, in Benton County, Iowa; April 1, 1995, in Iowa County, Iowa; and July 27, 1996, in Johnson County, Iowa. They did not occur on the same occasion, were not consolidated for trial or sentencing, and were separated by intervening arrests. Mr. Young's OWI offenses were not part of a single common scheme or plan. The only connection between the offenses was that the sentences ran concurrently. This does not satisfy any of the exceptions under Application Note 3 of section 4A1.2 of the Sentencing Guidelines that would allow a mitigation of criminal history points. This court also notes that Mr. Young was assessed a subtotal of 19 criminal history points, but received an additional two-point assessment because the instant federal offense occurred while he was under a criminal justice sentence for possession of a controlled substance.

Regardless of the relation of Mr. Young's prior sentences, his claim that Mr. Santiago failed to object to his criminal history point and category assessment is wrong. Mr. Young's Presentence Report (PSIR) cites objections made by Mr. Santiago on Mr. Young's behalf pertaining to the above issue on December 16, 2002. Thus, Mr. Young's ineffective assistance of counsel claim pertaining to argument 3 lacks merit.

### b. Sixth Amendment Violation

Mr. Young asserts in his fourth argument that the District Court erred in not submitting his sentence departure to a jury, per <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). Mr. Young claims he was never asked to waive his right to have a jury decide all facets of his case and that any departure from the U.S. Sentencing Guidelines requires submission of the issue to a jury.

In <u>Blakely</u>, the United States Supreme Court held that any departure in sentencing beyond that authorized by statute requires submission of the issue to a jury unless the underlying facts creating the departure are admitted by the defendant. 124 S. Ct. at 2543. In <u>United States v. Booker</u>, 125 S. Ct. 738, 755–56 (2005), the Supreme Court held that the <u>Blakely</u> principle applied to departures from the Sentencing Guidelines. In doing so, the Court also held that the Sentencing Guidelines are not mandatory, but are merely advisory. <u>Booker</u>, 125 S. Ct. at 757. Thus, the Court's holding "requires a sentencing court to consider Guidelines ranges . . . [,] but it permits the court to tailor the sentence in light of other statutory concerns . . . ." <u>Id.</u> (citations omitted). However, the Court held that its <u>Booker</u> holding only applied retroactively to "all cases on direct review." <u>Id.</u> at 769. The Court makes no mention of cases on collateral review.

Mr. Young was sentenced on January 24, 2003. His appeal was decided by the Eighth Circuit on September 10, 2003. Thus, Mr. Young is not privy to any relief under <u>Booker</u> because his case is not on direct appeal and the disposition of his case was final as of September 10, 2003, barring any grant of certiorari by the United States Supreme Court. Thus, Mr. Young's claim lacks merit and Mr. Santiago's decision to not raise a <u>Blakely</u> claim does not represent assistance of counsel that fell below an objective standard of reasonableness.

### c. Withdrawal from Conspiracy

The thirteenth argument Mr. Young raises in support of his section 2255 motion pertains to his alleged withdrawal from the conspiracy for which he was indicted and

pleaded guilty. Mr. Young does not raise this claim under the auspices of ineffective assistance of counsel, nor can he do so.

The Eighth Circuit's precedent regarding withdrawal from a conspiracy is clear. First, a defendant "bears the burden of proving that he withdrew from the conspiracy." United States v. Zimmer, 299 F.3d 710, 718 (8th Cir. 2002). Second, a defendant "must do more than demonstrate that he took affirmative action to withdraw from the conspiracy either by making a clean breast to the authorities or by communicating his withdrawal in a manner reasonably calculated to reach his conspirators." Id. A clean withdrawal requires that a conspirator "sever[] all ties to the conspiracy and its fruits, and act[] affirmatively to defeat the conspiracy by confessing to and cooperating with the authorities." United States v. Grimmett, 236 F.3d 452, 453 (8th Cir. 2001), quoted in Zimmer, 299 F.3d at 718. "The '[m]ere cessation of activities is not enough,' to establish withdrawal from a conspiracy." Zimmer, 299 F.3d at 718 (citing United States v. Granados, 962 F.2d 767, 773 (8th Cir. 1992)).

Because this argument does not fall under Mr. Young's ineffective assistance of counsel claim, Mr. Young's conspiracy withdrawal claim is procedurally barred. Mr. Young has not demonstrated either "[1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall, 114 F.3d at 758.

### d. Health Reasons

Mr. Young's fourteenth argument in his section 2255 motion asserts that he suffers from Hepatitis C and cirrhosis of the liver, both of which are "chronic." Mr. Young asserts that this court should vacate his sentence because given the seriousness of his health ailments, his 173 month sentence constitutes "a life sentence."

Section 2255 is clear under which situations it provides relief. Relief is available if a sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, or "the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under section 2255 is not available for health reasons or because Mr. Young's sentence may constitute "a life sentence."

<u>e. Remaining Claims</u>

Mr. Young's remaining ineffective assistance of counsel claims fall into two categories: arguments pertaining Mr. Santiago's performance and the advice he gave Mr. Young; and arguments pertaining to Mr. Young's claim that his cooperation was not adequately valued at sentencing. None of Mr. Young's remaining claims provide any basis for relief.

Mr. Young cites what he believes was Mr. Santiago's "perfunctory and ineffectual closing argument" at his sentencing hearing, failure to "subject the prosecution's statements" at sentencing "to meaningful adversarial testing," withdrawal during appeal, and failure to initiate "adequate representation." Mr. Young also states that Mr. Santiago "talked [him] out of having a suppression hearing," and "into dropping [his] motion to withdraw [his] guilty plea." Mr. Young's complaints are nothing more than critiques of strategic decisions Mr. Santiago made during his representation of Mr. Young that this court is not about to second-guess. Even if any of these decisions were thought unwise, which this court does not think, an unwise decision by counsel does not render assistance of counsel ineffective. <u>Wing</u>, 940 F.2d at 381. This court sees nothing in Mr. Santiago's representation of Mr. Young that fell below the requisite objective standard of reasonableness.

Mr. Young's remaining claims pertain to his receiving a harsher sentence than he believes his cooperation warranted. This includes Mr. Young's claim of unethical misconduct by AUSA Rose in the twelfth argument of the instant motion. Mr. Young claims that: (1) he was entitled to protection under section 1B1.8 of the U.S. Sentencing Guidelines because of his cooperation with the government; (2) the government failed to offer section 1B1.8 protection; and (3) Mr. Santiago's representation was ineffective for

failing to bring this matter to the District Court's attention during sentencing. Mr. Young claims he received an additional 88 months of incarceration because of this error. This court does not feel an error has occurred.

Section 1B1.8(a) of the U.S. Sentencing Guidelines states:

> Where a defendant agrees to cooperation with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

However, merely providing information on the unlawful activities of others devoid of a promise by the government to not use self-incriminating evidence against a defendant does not entitle a defendant to section 1B1.8 protection. See United States v. Buckendahl, 251 F.3d 753, 761 (8th Cir. 2001). The Eighth Circuit has stated that "[t]he government's discretion under this provision is extremely broad," and that "[t]he guideline gives no indication about when, how often, or under what circumstances the government should make such an agreement." Id. Thus, the Eighth Circuit has left the decision as to whether to move for section 1B1.8 sentence mitigation by filing a section 5K1.1 substantial assistance motion to the discretion of the prosecutor. Id. This discretion is not "completely unfettered," but is subject to constitutional and contractual constraints. Id. at 762. Thus, the government cannot use "race or religion or [any] reason not rationally related to a legitimate government end as the basis for deciding whether or not to file a motion." Id. Furthermore, "just as a defendant may not expect section 1B1.8 protection if he violates the agreement, the government is similarly bound by any agreement entered into." Id. at 762–63.

Although Mr. Young's plea agreement required his cooperation, Mr. Young was not promised anything in exchange for his cooperation other than that the government would dismiss Counts 2, 3, and 4 of the indictment if Mr. Young pleaded guilty to Count

1.  Paragraphs 11 through 17 of Mr. Young's plea agreement, which were individually initialed by Mr. Young, explicitly state that the government has complete discretion over whether to motion the court for a downward departure in Mr. Young's sentence. Nowhere in the plea agreement does the government promise anything to Mr. Young regarding a mitigation in sentence for his cooperation. As stated in paragraph 19 of the plea agreement, "The United States makes no promises as to the sentence to be imposed." Furthermore, during his plea hearing, Mr. Young was asked whether he understood "that the sentencing judge will not be bound to determine them [the Sentencing Guidelines] the same way that Mr. Santiago does?" Mr. Young replied, "yes." Mr. Young was also told during the sentencing hearing that "even if the government moves for [a] departure at the time of . . . sentencing, the trial judge is not obligated under the law to grant that motion." When asked if he understood that the sentencing judge was not obligated in any way to grant a motion for a downward departure of his sentence, Mr. Young replied, "yes." Thus, the government was free to use self-incriminating information provided by Mr. Young in determining his sentence range. Although AUSA Rose was free to offer section 1B1.8 protection to Mr. Young, she chose not to do so, which was within her discretion. Mr. Young was not entitled to such protection.

Furthermore, as the government correctly argues, Mr. Young did not suffer any prejudice because his self-incriminating statements were used in determining his sentence range. Mr. Young's sentence would have been the same had he chosen not to cooperate and provided no self-incriminating statements. Mr. Young admits he was in possession of 65 grams of methamphetamine when he was arrested on April 23, 2002. Under the Sentencing Guidelines, Mr. Young would have had a base offense level of 32, which combined with his Category VI criminal history, would have provided a sentencing range of 151 to 188 months of incarceration. Mr. Young was sentenced to 173 months of incarceration after his sentence was reduced by 35%, at the government's request, for his acceptance of responsibility. Thus, Mr. Young has not shown the requisite prejudice to

satisfy the requirements of section 2255 and an objection raised by his counsel, Mr. Santiago, concerning the applicability of section 1B1.8 to Mr. Young would have lacked merit. Failing to raise a meritless objection does not constitute ineffective assistance of counsel.

Finally, this court notes that Mr. Young's plea agreement, as already mentioned, made no promises concerning any downward departure of his sentence for cooperation, stated that Mr. Young had no right to withdraw his guilty plea because he was displeased with his sentence, stated his offense level for sentencing determination, and stated that Mr. Santiago had "represented him in a competent manner." Mr. Young is making arguments in the instant motion that directly contradict the plea agreement he signed. Mr. Young was free to object to Mr. Santiago's representation at any time prior to entering his plea and he signed the plea agreement completely of his own volition. Mr. Young raised no objections until he received a sentence that was harsher than he expected and he has raised no objections that would allow relief under section 2255.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to the Report and Recommendation within ten (10) days of the date of this Report and Recommendation, that the movant's motion for relief under 28 U.S.C. § 2255 be denied.[3]

June 28, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[3] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record that the district court judge will need to rule on the objections.

22